UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RICHARD W. JACQUES,

                Petitioner,              Case No. 2:16-cv-269

v.                                Honorable Robert J. Jonker

MITCH PERRY,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Richard W. Jacques is incarcerated with the Michigan Department of Corrections at the Baraga Correctional Facility (AMF) in Baraga, Michigan. Following a jury trial in the Menominee County Circuit Court, Petitioner was convicted of operating a vehicle while intoxicated causing death, Mich. Comp. Laws § 257.625(4), and of leaving the scene of an accident that resulted in death, Mich. Comp. Laws § 257.617(3).[1] On February 24, 2012, the court sentenced Petitioner to concurrent prison terms of 7 to 15 years for each offense.

       On December 5, 2016, Petitioner timely filed his habeas corpus petition which raises eight grounds for relief, as follows:

      I.     Insufficient evidence to establish elements of proximate cause for driving while intoxicated causing death, in part due to no included offense, also therefore reversing guilt of leaving scene causing death with matching wording.

---

[1] Petitioner was also convicted of a misdemeanor count of moving a dead body without the permission of the medical examiner, Mich. Comp. Laws § 52.204. Petitioner was sentenced to pay a fine for that offense. Because that offense did not result in the state holding Petitioner in custody, it is not the proper subject of a habeas petition.

II.     Trial court erred in scoring offense variable five for serious psychological injury to victim's family.

III.    Admittance of defendant's statement to the police and suicide note, which is ineffective assistance by trial counsel and error of trial court.

IV.     Expert witness allowed to testify in violation of Rule 702. Ineffective assistance of counsel and trial court error.

V.      Ineffective assistance of counsel for failure to have lesser-included offense to count three when there were disputed factual elements.  Responsibility for properly conducted trial rest also on trial court.

VI.     Ineffective assistance of counsel for not objecting to prosecutorial misconduct.

VII.    Ineffective assistance of counsel.

VIII.   Ineffective assistance of counsel and abuse of trial court discretion for admission of statement which confused issues and not part of charge.

(Pet., ECF No. 1, PageID.6, 9, 11-12, 14.)  Respondent has filed an answer to the petition (ECF No. 12) stating that the grounds should be denied because they are procedurally defaulted and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

The facts set forth below are not in dispute.  During the afternoon and evening of December 18, 2010, Petitioner and his best friend Brett Ingram were drinking.  They drank in bars and they drank in restaurants.  Eventually they picked up some beer at a gas station and traveled to a friend's camp.  At some point later in the night, Brett left on foot.  After fifteen or twenty minutes, Petitioner went after Brett in Petitioner's van.  Petitioner's van was traveling down a gravel road away from the camp when he came upon Brett and struck him, killing Brett instantly.

2

Petitioner was distraught.  He gathered some of the bits and pieces of the van that were strewn in the roadway and drove 30 miles home.  Once there, as he pondered his options, he fell asleep.

When he woke the next morning, he drove back to the scene of the accident.  He loaded his friend's frozen body into the van, and drove to the camp where Brett was living at the time.  He ran a hose from the van exhaust through the back window of the van and waited to die.  As he waited, he drafted a suicide note.

The camp where Brett was living belonged to Brett's sister and brother-in-law, the Sindlers.  They happened to visit the camp that afternoon.  They found Petitioner, still alive, in the van.  He acknowledged that he had killed Brett and that Brett's body was in the van.  The Sindlers contacted the police.

The prosecutor charged Petitioner with three crimes: operating the van while intoxicated causing death, leaving the scene of an accident Petitioner caused resulting in death, and moving a body without permission of the medical examiner.  Petitioner was also charged with the lesser-included offense of violating Mich. Comp. Laws § 257.617(2), leaving the scene of an accident that results in death, which differs from a violation of Mich. Comp. Laws § 257.617(3) in that the former does not require that the accident be caused by the charged party.

The trial judge recounted the theories of the parties as part of his final instructions to the jury:

> The Prosecution's theory . . . is as follows: "Richard Jacques was intoxicated or visibly impaired or driving his van in a manner that caused the death of Brett Ingram.  Richard Jacques was at fault.  He then left the scene."
>
> The theory submitted . . . on behalf of the defendant is as follows: "It is the defendant's theory of the case that on December 18th, 2010, in Lake Township of

3

Menominee County, a vehicle driven by the defendant was in an accident with a pedestrian, Brett Ingram.  Under the facts and circumstances of that night, the pedestrian, Brett Ingram, was in the middle of a dark, two-lane roadway, and was an intervening, superseding cause, which was not reasonably foreseeable. Therefore, the Prosecution cannot prove beyond a reasonable doubt the proximate cause, which is a required element of Counts 1 and 3, and, therefore, the defendant is not guilty of those charges. Furthermore, the Prosecution cannot prove beyond a reasonable doubt that the defendant was operating a motor vehicle under the influence of alcohol, that is, because of drinking alcohol his mental or physical condition was significantly affected, and the defendant was no longer able to operate a vehicle in a normal manner.  Therefore, another requirement of . . . Count 3 is unproven.  As a result of that, the defendant is also not guilty of Count 3.  It is the defendant's theory that the Prosecution can prove each and every element of Count 2 and Count 4, and, therefore, the defendant is guilty of those charges."

(Trial Tr. X, ECF No. 13-16, PageID.1499-1500.)

The prosecutor put on several witnesses who had observed Petitioner drinking or acting intoxicated that evening and other witnesses who heard Petitioner acknowledge that he had been drunk when he hit Ingram.  The prosecutor also elicited testimony from an accident reconstruction expert who testified that Petitioner should have been able to stop.  Defense counsel presented testimony from an opposing expert who testified that even a sober driver could not have avoided hitting Ingram.

The jury deliberated for several hours and sought additional guidance on the meaning of "causation."  (Trial Tr. X, ECF No. 13-16, PageID.1515-1519.)  In the end, however, the jurors concluded that Petitioner had caused the accident and entered their verdicts accordingly. (*Id*., PageID.1520-1522.)  The trial court sentenced Petitioner as set forth above.  (Sentencing Tr., ECF No. 13-17.)

Petitioner, with the assistance of appointed counsel, directly appealed his convictions and sentences raising two issues, issues he also raises in his petition as Issues I and II. (Pet'r's Appeal Br., ECF No. 13-18, PageID.1580.)  By unpublished opinion issued March 19,

4

2013, the Michigan Court of Appeals concluded that the prosecutor had presented sufficient evidence of causation and Petitioner's intoxication and that the trial court had properly scored Petitioner's sentencing guidelines variables.  (Mich. Ct. App. Op., ECF No. 13-18, PageID.1568-1575.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same issues he raised in the court of appeals.  (Appl. for Leave to Appeal, ECF No. 13-19, PageID.1631-1645.)  The Michigan Supreme Court denied leave by order entered November 25, 2013, because the court did not believe the questions presented should be reviewed.  (Mich. Order, ECF No. 13-19, PageID.1630.)  Petitioner sought reconsideration.  (Mot. for Recon., ECF No. 13-19, PageID.1718-1724.)  The court denied that relief as well.  (Mich. Order, ECF No. 13-19, PageID.1629.)

Petitioner returned to the trial court, filing a motion for relief from judgment raising several issues which roughly correspond to the issues raised in his habeas petition as Issues III-VIII.  (Mot. for Relief from J., ECF No. 13-20.)  The trial court summarily disposed of the motion in one sentence:

> Defendant's Motion for Relief From Judgment is denied as it alleges grounds for relief which either were or could have been raised on appeal from the conviction and sentence.

(Menominee Cty. Cir. Ct. Order, ECF No. 13-21.)  Petitioner sought leave to appeal that order, first in the Michigan Court of Appeals and then in the Michigan Supreme Court.  Those courts denied leave by orders entered May 4, 2015, and November 30, 2016, respectively.  (Mich. Ct. App. Order, ECF No. 13-22, PageID.1792; Mich. Order, ECF No. 13-23, PageID.1848.)  This petition followed.

5

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This

standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving Petitioner's sufficiency challenge, the Michigan Court of Appeals applied the following standard:

> We review a defendant's challenge to the sufficiency of the evidence de novo. *People v. Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).  In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.

> *People v. Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).  However, we do not interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses.  *People v. Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended 441 Mich 1201 (1992).  It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences.  *People v. Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).  A prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides.  *People v. Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).  Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime.  *People v. Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).  We resolve all conflicts in the evidence in favor of the prosecution.  *People v. Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

(Mich. Ct. App. Op., ECF No. 13-18, PageID.1570-1571.)  Although the court of appeals relied on state authorities, the standard it applied is functionally identical to the *Jackson* standard.

Petitioner challenges the sufficiency of the prosecutor's evidence with regard to causation and intoxication.  With regard to causation, Petitioner argued that the victim was extremely intoxicated and was walking in the middle of a dark, snowy road with his back to traffic, and that this conduct was grossly negligent.  Such grossly negligent conduct, Petitioner claims, operated as an intervening cause that broke the causal link between Petitioner's conduct and Ingram's death.

Petitioner contends that because the victim's conduct here was very much like the victim's conduct in another Michigan case, *People v. Feezel*, 783 N.W.2d 67 (Mich. 2010), and because the victim's conduct in *Feezel* broke the causation chain, the prosecutor's evidence was insufficient to show causation in Petitioner's case as well.  Part of Petitioner's argument is focused on challenging the court of appeals' decision with respect to the proper interpretation of the elements of the offense per *Feezel*—elements that are compared to the evidence to measure sufficiency—and part of the argument is focused on the evidence.

9

To the extent Petitioner's argument is directed to challenging the state court's identification of the elements of the criminal offense, it is not cognizable on habeas review. *Jackson* makes clear that state law determines the elements. *Jackson,* 443 U.S. at 324 n.16.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (observing that the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law") (internal quotations and citations omitted).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit counsels "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  The court of appeals' conclusion that the facts, as laid out by Petitioner, would not foreclose a finding that Petitioner proximately caused Ingram's death is, therefore, binding on this court and conclusively resolves that question.

The appellate court did not stop with that analysis.  The court went on to note that Petitioner had not laid out the facts consistently with the proper standard.  (Mich. Ct. App. Op., ECF No. 13-18, PageID.1573-1574.)  Petitioner simply looked to the evidence that favored him and concluded the evidence that did not favor him was not credible.  In doing that, Petitioner turns the *Jackson* standard on its head.  Applying the standard correctly, the court of appeals stated:

> [The prosecutor's expert] testified that a sober, safe driver could have seen the victim and stopped the vehicle in time.  Although defendant offered contrary expert testimony, we do not re-weigh the credibility of witnesses, and resolve all conflicts

10

in evidence in favor of the prosecution.  *Wolfe*, 440 Mich at 514; *Kanaan*, 278 Mich App at 619.  Thus, taken in the light most favorable to the prosecution, defendant's collision with the victim was quite literally foreseeable; that is, defendant should have been able to see and avoid the collision, even apart from his foreknowledge that the victim would be walking on the roadway.  For all of these reasons, we find that the prosecution offered sufficient evidence to enable a rational juror to conclude that defendant's conduct was the proximate cause of the victim's death.

(Mich. Ct. App. Op., ECF No. 13-18, PageID.1573-1574.)  With regard to causation, Petitioner fails to demonstrate that the Michigan Court of Appeals resolution of his sufficiency argument is contrary to, or an unreasonable application of, the clearly established federal law set forth in *Jackson*.  Accordingly, he is not entitled to habeas relief on that claim.

With respect to the issue of "intoxication," Petitioner's argument follows a similar pattern.  First, he offers his interpretation of the elements—what the prosecutor must show—and then he lays out the evidence presented—but only in a light that favors him.  Not surprisingly, the court of appeals rejected this argument with respect to intoxication as it had with respect to causation.

Petitioner claimed that the "intoxication" evidence was insufficient because it was not established by chemical analysis or the testimony of a witness who actually observed the impaired driving.  The court of appeals rejected that statement of the law:

Defendant is incorrect in his assertion that evidence of intoxication can only be established by "chemical analysis" or by testimony of a witness who observed the impaired driving.  The case cited by defendant for that proposition does not so hold. *People v. Calvin*, 216 Mich App 403, 548 NW2d 720 (1996).

(Mich. Ct. App. Op., ECF No. 13-18, PageID.1574.)  Instead, the appellate court explained, the evidence need only support the inference "that defendant was still visibly impaired by alcohol when he struck the victim."  (*Id*.)  The state court's determination of the state law requirement

11

binds this Court.  *See Wainwright*, 464 U.S. at 84 ; *Stumpf*, 722 F.3d at 746 n.6; *Thomas*, 898 F.3d at 700 n.1.

> The court of appeals then reviewed the evidence supporting such an inference:

> A driver is "visibly impaired" when his ability to drive is "so weakened or reduced by the consumption of intoxicating liquor that defendant drove with less ability than would an ordinary, careful, and prudent driver."  *People v. Lambert*, 295 Mich 296, 305; 235 NW2d 338 (1975).  Here, numerous individuals testified to defendant's increasing level of intoxication and impairment throughout the day.  Lay witnesses are qualified to testify about opinions they form as a result of direct physical observation.  MRE 701; *Lamson v. Martin (After Remand)*, 216 Mich App 452, 459; 549 NW2d 878 (1996).  Crucially, defendant was observed by numerous individuals, including a Michigan State Police officer on disability, at Camp Shakey Saloon in a state of intoxication shortly before the incident.  Johnson testified that as of 8:30 p.m. that evening, he observed defendant falling asleep at the bar, swaying, and slurring his words.  Harris then testified that defendant and victim arrived at his camp a half hour later and that defendant consumed another beer and smoked marijuana, and that the victim left fifteen or twenty minutes after that.  Harris also testified that defendant went in search of the victim at approximately 9:30 p.m.  Harris also testified that defendant got "hung up" leaving the camp's driveway and then "just took off, tearing down the road."  Although Harris also testified that this was the result of snow, rather than defendant's intoxication, a jury is "free to believe or disbelieve, in whole or in part, any of the evidence presented."  *People v. Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

(Mich. Ct. App. Op., ECF No. 13-18, PageID.1574.)  The court of appeals' recitation of the facts supporting the necessary inference, though compelling enough, is incomplete.  The court of appeals disregarded additional evidence:  two witnesses testified that Petitioner acknowledged he was drunk when he hit Ingram.

> Put simply, the evidence, when measured against the proper requirements, and viewed in a light most favorable to the prosecutor, suffices to support an inference, beyond a reasonable doubt, that Petitioner was intoxicated when he hit Ingram.  Petitioner's argument that viewing the same evidence in a light that favors him could support the opposite inference, is irrelevant.  Petitioner has failed to show that the state appellate court's resolution of this claim is

12

contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief.

Petitioner next complains that the trial judge erred when he scored Offense Variable 5, regarding psychological injury to the victim's family, at 15 points.  Such a score indicates that "serious psychological injury requiring professional treatment occurred to a victim's family."  (Mich. Ct. App. Op., ECF No. 13-18, PageID.1575.)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 1; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in  Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S.

13

443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information.  Members of the victim's family testified at sentencing regarding this issue.  (Sentencing Tr., ECF No. 13-17, PageID.1538-1543.)  Petitioner simply claims that the court drew the wrong conclusion when presented with the otherwise uncontested facts.  He therefore fails to demonstrate that his sentence violated due process.  *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

Petitioner is not entitled to relief on this claim because he does not raise a federal constitutional issue cognizable on habeas review.[2]

Respondent argues that the Court's consideration of the remainder of Petitioner's habeas issues is barred by the doctrine of procedural default.  When a state-law default prevents

---

[2] Moreover, even if the 15 points for Offense Variable 5 changed to 0, Petitioner's new minimum sentence range (43 to 86 months) would still include the 7-year minimum sentence actually imposed by the court.  (Pet'r's Mot for Relief from J. Br., ECF No. 13-20, Page:ID.1747.)

further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Here, the trial court's denial of Petitioner's motion for relief from judgment relied upon a state procedural rule.  Michigan Court Rule 6.508(D) precludes a trial court from granting relief where the motion alleges grounds previously decided against the movant in a prior appeal or proceeding and where the grounds could have been raised in a prior appeal or proceeding but were not and the movant fails to demonstrate cause for that failure and resulting prejudice or actual innocence.  The trial court's one-sentence order denying Petitioner's motion indicates that his grounds were or could have been raised before.  (Menominee Cty. Cir. Ct., ECF No. 13-21, PageID.1791.)  Comparison of Petitioner's appellate pleadings and his motion for relief from judgment indicate that the motion issues were not raised in his prior appeal.  Accordingly, the trial

court must have denied Petitioner's motion because the grounds could have been raised, were not, and he failed to establish cause and prejudice or his actual innocence.

There is no question that Petitioner failed to comply with the requirement to raise his post-judgment motion issues in the Michigan Court of Appeals on direct appellate review; thus, he failed to follow the state procedural rule.  The state court expressly relied upon Petitioner's default in denying his claim.  It is also beyond dispute that the procedural rule is an adequate and independent ground for denying relief.

A rule is an adequate and independent ground when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  Mich. Ct. Rule 6.508(D)(3) "was firmly established and regularly followed . . . and was an adequate and independent state ground for denying review."  *Gates v. Hoffner*, No. 17-2198, 2018 WL 1614261, at *2 (6th Cir. Mar. 23, 2018) (citing *Simpson v. Johnson*, 238 F.3d 399, 407 (6th Cir. 2000)).

Because Petitioner procedurally defaulted his federal claim in state court, to raise those issues in this Court, Petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable

16

juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner may contend he is actually innocent; however, he does not offer any new reliable evidence to support his claim.  Indeed, the focus of his arguments does not appear to be that he is innocent, but that he is guilty of a lesser crime.  Accordingly, to avoid the procedural default bar, Petitioner must show cause for his default and resulting prejudice, coincidentally the same showing he was required to make under Michigan Court Rule 6.508(D)(3) to convince the state trial court to consider his claims.

Petitioner offers as cause here the same cause he offered in the state trial court: the ineffective assistance of his appellate counsel.  In *Strickland v. Washington*, 466 U.S. 668, (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687-88.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."

17

*Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

        To determine the reasonableness of appellate counsel's performance, the Court must consider the merits of Petitioner's motion-for-relief-from-judgment issues.  Under the circumstances, simply addressing the merits at the outset appears to be simpler.

        The United States Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

        Plaintiff complains that the suicide note he wrote while waiting to die in the van and the statement he made to police after waiving his *Miranda* rights should not have been

18

admitted.  He contends that, by virtue of (1) the carbon monoxide in his blood or (2) his fragile psychological state, he was not competent and, therefore, could not waive his rights.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994).  Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid *Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law."  *Texas v. Cobb*, 532 U.S. 162, 172 (2001) (quotation and citation omitted).  The cases in which a defendant can make a colorable argument that a confession was compelled despite the fact that law enforcement authorities adhered to *Miranda* are rare.  *Dickerson*, 530 U.S. at 444.

The test for determining whether an individual is "in custody" for purposes of *Miranda* is objective: whether a reasonable person in the defendant's position, knowing the facts as the defendant knew them, would have felt that he was under arrest or was "otherwise deprived of his freedom in any significant way."  *Miranda*, 384 U.S. at 477.  The determination does not turn on the subjective views of either the interrogating officer or the person being questioned. *Stansbury*, 511 U.S. at 323; *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003).  The Sixth

Circuit has identified several factors to be considered when determining whether an interrogation was custodial:  (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he did not need to answer questions.  *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (citing *United States v. Panek*, 552 F.3d 462, 465 (6th Cir. 2009)).

With regard to his suicide note, written before police even arrived at the Sindler camp, Petitioner simply cannot claim that he was "in custody."  Because Petitioner was not in custody, neither the *Miranda* warnings nor Petitioner's waiver of them is relevant.  Petitioner's competence to waive the rights is also, therefore, irrelevant.  Petitioner's drunkenness, distress, psychological fragility, or befuddlement by carbon monoxide poisoning, would not impact the admissibility of the suicide note.

Petitioner was very obviously in custody when the Michigan State Police detectives interviewed him at the Menominee County Jail.  (Trial Tr. V, ECF No. 13-11, PageID.1003-1004.) The detectives read the *Miranda* rights to Petitioner, he acknowledged he understood them, and he waived them.  (*Id*., PageID.1004-1005.)  Then, the detectives interviewed him for about an hour and Petitioner prepared a handwritten statement.  (*Id*., PageID.1005-1026.)

Petitioner contends that his waiver was not knowing and voluntary because he was distraught and affected by carbon monoxide.  That is not typically the focus of an inquiry into the voluntariness of a confession.  The Supreme Court has emphasized that "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).  Neither Petitioner's distress nor his inhalation of carbon monoxide were caused by the government.

20

Nonetheless, there is a second dimension to "voluntariness" that is implicated by Petitioner's state of mind. *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (The inquiry "has two distinct dimensions.") (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  The waiver must have been made with a full awareness of the right being abandoned and the consequences of the decision to abandon the right. *Id.*  An individual need not know every possible consequence of a waiver, however. *Spring*, 479 U.S. at 574.

Petitioner suggests that his ability to understand the rights he was abandoning and the consequences of that abandonment were impaired by his distress and the effects of carbon monoxide poisoning.  Petitioner offers nothing to support that suggestion except his say-so.  That is not enough.  There must be some "evidence or proffer of evidence in the record that 'clearly reflects a question' about the voluntary nature of his statements." *United States  v. Fried*, No. 88-5292 *et al.*, 1989 WL 88495 at \*10 (6th Cir. Aug. 7, 1989) (quoting *United States v. Bentley*, 726 F.2d 1124 (6th Cir. 1984)).

The record here indicates that Petitioner was calm during his interview, not distraught.  (Trial Tr. V, ECF No. 13-11, PageID.1014-1015.)  Moreover, because of his earlier suicide attempt, his psychological state was evaluated immediately after the interview.  (*Id.*, PageID.1025.)  There is nothing from that evaluation that suggests he was impaired by distress. After that evaluation, Petitioner's blood was drawn.  Test results showed no alcohol in his blood, but a 10% level of carbon monoxide in his blood.  Although Petitioner makes much of this finding, "smokers can have COHb levels of 5-15%, depending upon the number of cigarettes or cigars they smoke daily." *Smith v. United States*, No. 3:95cv445, 2012 WL 1453570, at \*7 n.28 (S.D. Ohio,

Apr. 26, 2012).  That result, without more, does not call into question the voluntariness of Petitioner's confession.

Petitioner does not blame the court for failing to suppress his statements during the interview, or Petitioner's handwritten statement.  He blames his counsel.  Petitioner argues that counsel rendered ineffective assistance because she failed to move to suppress the statements.  As noted above, to prevail on an ineffective assistance of counsel claim the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Strickland,* 466 U.S. at 687-88.

There is nothing Petitioner said or wrote in his custodial "confession" that was not already in evidence by virtue of Petitioner's statements to the Sindlers or his suicide note. Petitioner's statements to police regarding the amount of alcohol he had imbibed that day were likely the most troubling aspect of his confession.  But, Petitioner's confession also reinforced in some detail his claim that he came over the top of a hill and Ingram was there, right in the middle of the road.  Petitioner could do nothing to avoid the accident.  Under those circumstances, where there is almost no cost to Petitioner for admission of the confession, where there is significant benefit, and where there is no evidence to support Petitioner's claim that the confession was involuntary, counsel's performance cannot be said to have fallen below an objective standard of reasonableness by virtue of her decision to forego a challenge to the voluntariness of Petitioner's confession.

Moreover, because Petitioner's confession simply echoed admissions he had made to others either before or after his custodial confession, Petitioner has failed to identify any

prejudice.  There is no reason to believe that the result would have been any different if Petitioner's counsel had moved to exclude the confession, whether she succeeded in that effort or not. Accordingly, Petitioner has failed to demonstrate that the state courts' rejection of this ineffective assistance claim is contrary to, or an unreasonable application of, clearly established federal law.

Petitioner next complains that his counsel rendered ineffective assistance because she failed to investigate the methods used by the prosecutor's expert, identify the flaws, and succeed in having the prosecutor's expert testimony excluded.  Petitioner contends that the prosecutor's accident reconstruction expert was so inept in applying scientific principles and methods and so disregarded the facts of the case that the testimony should not have been admitted under Michigan Rule of Evidence 702.  (Pet'r's Br., ECF No. 2, PageID.326.)  The primary flaw, Petitioner maintains, was the expert's failure to rely on nighttime sight distances.  (*Id.*, PageID.327.)  Petitioner identifies other flaws, specifically, the expert did not know: friction factors, the luminescence range of Petitioner's vehicle's headlights, color contrast, or where the victim was standing.  (*Id.*, PageID.327-328.)

Petitioner's complaints about the expert testimony go to its weight, not its admissibility.  "[Michigan Rule of Evidence] 702 establishes preconditions for the admission of expert opinion.  Such testimony must be rooted in 'recognized scientific, technical, or other specialized knowledge' and must assist the trier of fact." *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 412 (Mich. 2004).  Petitioner attempts to characterize his challenge to the prosecutor's expert as one centered on the expert's expertise—a proper challenge to admissibility under Rule 702.  Such a challenge is absurd because both experts were well-trained and experienced.  Both experts brought the same type of expertise to bear in reconstructing this

accident. They just reached different conclusions—in significant part because they relied on different facts to reach those conclusions.

To challenge admissibility of the prosecutor's expert's opinion would have been futile. Counsel's failure to raise a meritless issue does not constitute ineffective assistance. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Petitioner is not challenging expertise, he is actually challenging the facts upon which the prosecutor's expert relied. In *Moore v. Cerling*, No. 243017, 2004 WL 94543 (Mich. Ct. App. Jan. 20, 2004), the Michigan Court of Appeals explained the nature of a challenge to the factual basis of an expert's opinion:

> Under MRE 703, an expert is entitled to render an opinion based on facts or data "perceived by or made known to the expert at or before the hearing." There is no requirement that an expert actually visit the scene of an accident in order to render a qualified opinion. See *Rickwalt v. Richfield Lakes Corp*, 246 Mich App 450, 458; 633 NW2d 418 (2001), citing *Berryman v. Kmart Corp*, 193 Mich App 88, 99; 483 NW2d 642 (1992). Any such defect in the expert's testimony goes to its weight, not its admissibility. *Id*. In addition, "an opposing party's disagreement with an expert's opinion or interpretation of facts, and gaps in expertise, are matters of the weight to be accorded to the testimony, not its admissibility." *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401; 628 NW2d 86 (2001).
>
> *       *       *
>
> Under MRE 702, "[a]s long as the basic methodology and principles employed by an expert to reach a conclusion are sound and create a trustworthy foundation for the conclusion reached, the expert testimony is admissible." *Nelson v American Sterilizer Co (On Remand)*, 223 Mich App 485, 491-492; 566 NW2d 671 (1997), citing *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 590 (1993). Plaintiff claims the trial court erred in admitting Dr. Cavanaugh's testimony because there was no foundation showing that Dr. Cavanaugh had followed

24

acceptable scientific methods in reaching his conclusions.  Plaintiff claims Dr. Cavanaugh's methodology was flawed because he relied on plaintiff's medical records, the police report of the accident, photographs of the vehicles, and plaintiff's deposition testimony.

These arguments are unpersuasive.  In *Dudek v. Popp*, 373 Mich 300, 306-307; 129 NW2d 393 (1964), our Supreme Court held that "one properly qualified in accident investigative background may testify either from personal observation or from properly authenticated and admitted exhibits."  We also held in *Lopez v. General Motors Corp*, 224 Mich App 618, 634; 569 NW2d 861 (1997), that videotaped crash tests were admissible to support the testimony of biomechanics and kinematics experts, even though the tests were not reconstructions of the actual accident.  We held that defects in the evidence could be attacked on cross-examination and went to the weight, not the admissibility, of the evidence.  *Id*. at 632, n 20.  Plaintiff in the instant case had ample opportunity to attack Dr. Cavanaugh's testimony. Plaintiff questioned Dr. Cavanaugh extensively about the information he used in formulating his opinion, as well as the information he did not take into account.  We conclude that any defects in the basis of Dr. Cavanaugh's opinion were sufficiently brought to the attention of the jury and are matters of weight, not admissibility.

*Moore*, 2004 WL 94543, at *1-2; *see also Surman v. Surman*, 745 N.W.2d 802, 815 (Mich. Ct. App. 2007) ("[A]n opposing party's disagreement with an expert's opinion or interpretation of facts, present[s] issues regarding the weight to be given the testimony not its admissibility.") (footnote omitted).  The record demonstrates that Petitioner's counsel attacked the weight of the prosecutor's expert's opinion with vigor.

Petitioner has failed to demonstrate that the state courts' rejection of his ineffective assistance claim based on the admissibility of the prosecutor's expert's testimony is contrary to, or an unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief on this claim.

Petitioner argues he was denied his constitutional rights because the jury was not instructed on the lesser included offense of operating a motor vehicle while visibly impaired.  To

understand Petitioner's argument, it is necessary to review the statutes under which he was charged.  Michigan's operating-while-visibly-impaired-causing-death statute provides:

> A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes the death of another person is guilty of . . . a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both.

Mich. Comp. Laws § 257.625(4).  Subsections (1), (3), and (8) set forth three circumstances where a person must not operate a motor vehicle: (1) while intoxicated, as defined in the statute; (3) while visibly impaired due to consumption of alcohol, a controlled substance, or both; and (8) with any amount of a controlled substance in one's body.  Mich. Comp. Laws § 257.625.

Michigan law requires drivers who have been involved in an accident with an individual or with another vehicle operated or attended by another individual must provide information to police and the other persons involved, and also render assistance in securing medical aid or arrange for or provide transportation to any injured individual. Mich. Comp. Laws § 257.619.  Michigan requires drivers to remain at the scene of an accident until they have fulfilled their obligations under § 257.619.  To ensure compliance, the state makes leaving the scene of an accident a criminal offense.

The severity of the crime depends on the severity of the injury and on whether or not the departing driver caused the accident.  If a driver fails to stop and remain at the scene "and the accident results in serious impairment of body function or death, the individual is guilty of a felony punishable by imprisonment for not more than 5 years or by a fine of not more than $5,000.00, or both.  Mich. Comp. Laws § 257.619(2).  Under the same circumstances, if "the accident results in the death of another individual" and the departing driver caused the accident

26

"the [departing driver] is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than \$10,000.00, or both."  Mich. Comp. Laws § 257.619(3).

The offense prohibited by subsection (2) is a lesser-included offense of the offense prohibited by subsection (3).  The prosecutor charged Petitioner with both crimes.  If the jury determined Petitioner "caused" the accident, he would be guilty of violating subsection (3); if not, he would be guilty of violating subsection (2).

The prosecutor had the same option—with the same dividing line, causation—for the operating-while-visibly-impaired-causing-death violation.  The prosecutor could have offered the jurors the opportunity of convicting Petitioner of the lesser charge of operating-while-visibly-impaired if they concluded that the prosecutor had established that Petitioner were visibly impaired but that Ingram's condition and position on the road operated as an intervening cause.  Mich. Comp. Laws § 257.625(3).  Petitioner claims that the court's failure to so instruct the jury—or more accurately, Petitioner's counsel's failure to request the lesser-included offense instruction—violated his due process rights.

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this

27

constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  It is also the prerogative of the state to determine what charge or charges to bring:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.  Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted).  The prosecutor did not bring a charge of operating-while-visibly-impaired.

Similarly, the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense.  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a particular crime.  *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .")

Petitioner's argument suggests that he was somehow denied a defense here.  That is not the case.  Petitioner was able to, and did, argue that his operation of the motor vehicle did not cause the accident.  The jury was properly instructed with regard to causation such that if the

28

jury concluded that Petitioner's operation of the motor vehicle did not cause the accident he would not have been found guilty of operating while visibly impaired causing death or leaving the scene of an accident caused by Petitioner resulting in death.  Put differently, the jury did not reject Petitioner's argument of an absence of causation because the instructions denied them the opportunity to consider it; they rejected the argument because they concluded the evidence did not support it.

Finally, the Due Process Clause requires providing lesser included offense instructions in <u>capital</u> cases.  *Beck v. Alabama*, 447 U.S. 625 (1980).  Lesser included offense instructions were also required in <u>noncapital</u> cases under the English common law and they are still required under the common law or by statute in every state and in the federal courts, if and when the evidence supports it.  *Id.* at 633-34, 636 n.11, 12.

Even though the courts of this nation are in complete accord as to the propriety of lesser included offense instructions, the Supreme Court has never held that lesser included offense instructions are required as a matter of constitutional due process in noncapital cases.  *Id.* at 638 n.14; *see also Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc) ("[The failure to instruct on lesser included offenses in noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]").  Thus, a state court's refusal to read a lesser included offense instruction cannot be contrary to, or an unreasonable application of, clearly established federal law.

In *Keeble v. United States*, 412 U.S. 205 (1973), the Supreme Court identified why lesser-included offense instructions might augur to the benefit of a criminal defendant:

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction.  True, if the

29

prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal.  But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory.  Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.  In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault.  Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented.  But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright.  We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.

*Keeble*, 412 U.S. at 212-13.  The *Keeble* court's identification of the potential significance of a lesser-included offense instruction in a noncapital case did not prompt the court to protect that interest through the Due Process Clause.  Nonetheless, it is clear that the lesser-included offense instruction in Petitioner's case did not have even the limited significance identified by the *Keeble* court.

        The jurors in Petitioner's case did not face a *Keeble* situation where, if they were wavering with respect to the causation issue, it left them with an "all or nothing" choice between conviction and acquittal.  Because the prosecutor charged Petitioner with a lesser-included offense with respect to leaving the scene, the jurors knew Petitioner would be found guilty of a felony even if their doubts with respect to causation precluded a guilty verdict on the operating-while-visibly-impaired-causing-death or leaving-the-scene-of-an-accident-the-driver-caused-resulting-in-death charges.  Under the circumstances, there was simply no purpose in potentially pinning another conviction on Petitioner by requesting a lesser-included-offense instruction for operating-while-visibly-impaired.  Petitioner has, therefore, failed to demonstrate that counsel's performance fell short with respect to this issue.

Moreover, because the jury determined Petitioner's operation of the motor vehicle had caused the accident even though they had the option of convicting him of a felony that did not require causation, Petitioner has failed to show any prejudice resulting from counsel's failure to request an instruction regarding operating while visibly impaired.  Therefore, the state court's rejection of Petitioner's lesser-included-offense instruction claim is neither contrary to, or an unreasonably application of, clearly established federal law and Petitioner is not entitled to habeas relief.

Before trial, the court had determined that the testimony of Nicole Schahczenski would not be admissible in Petitioner's trial.  (Trial Tr. VII, ECF No. 13-13, PageID.1210-1211.) Ms. Schahczenski had participated in a conversation with Petitioner and Ingram on December 31, 2009.  (*Id.*, PageID.1212-1224.)  Ms. Schahczenski reported that Petitioner had joked about Ingram's tendency to just leave places putting Petitioner in the position of having to pick Ingram up.  (*Id.*)  Ms. Schahczenski reported further that Petitioner had joked that maybe next time, Petitioner should run Ingram over.  (*Id.*)

Upon further consideration during trial, the court concluded that Ms. Schahczenski's testimony might be relevant to the foreseeability of Ingram's presence in the roadway.  (*Id.*, PageID.1221-1224.)  The prosecutor questioned her to facilitate the judge's reconsideration of the issue, and Petitioner's counsel cross-examined her, all outside the presence of the jury.  (*Id.*, PageID.1211-1221.)  After hearing the testimony, the court concluded that the testimony was more probative than prejudicial and reversed his earlier decision to exclude the testimony.

The trial court indicated that his decision did not involve Rule 404, because the issue was not a prior act, but a prior statement.  (*Id.*, PageID.1221-1222.)  Nonetheless, Petitioner

31

complains that the trial court ran afoul of Michigan Rule of Evidence 404 and the Sixth Circuit

decisions in *United States v. Mack*, 258 F.3d 549, 553 (6th Cir. 2001), and *United States v.

Merriweather*, 78 F. 3d 1070, 1074 (6th Cir. 1996), cases applying Federal Rule of Evidence 404.

The Court will address the argument as Petitioner has raised it.

       As the Supreme Court explained in *Estelle*, 502 U.S. 62, an inquiry into whether

evidence was properly admitted or improperly excluded under state law "is no part of the federal

court's habeas review of a state conviction [for] it is not the province of a federal habeas court to

re-examine state-court determinations on state-law questions." *Id.* at 67-68.  Rather, "[i]n

conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." *Id.* at 68.  State-court evidentiary rulings

cannot rise to the level of due process violations unless they offend some principle of justice so

rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v.

Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268

F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach

accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

       Further, under the AEDPA, the court may not grant relief if it would have decided

the evidentiary question differently.  The court may only grant relief if Petitioner is able to show

that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme

Court on a question of law or if the state court decided the evidentiary issue differently than the

Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d

846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

       There is no clearly established Supreme Court precedent that holds that a state court

violates the Due Process Clause by permitting propensity evidence in the form of Rule 404 "other

bad acts" evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission

of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75. The Court stated in a footnote

that, because it need not reach the issue, it expressed no opinion as to whether a state law would

violate due process if it permitted the use of prior crimes evidence to show propensity to commit

a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts

testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519

U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed

the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established

Supreme Court precedent which holds that a state violates due process by permitting propensity

evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d at 512.

        Because there was no constitutional violation in the admission of the "other bad

act" evidence, the state court decision was "far from" an unreasonable determination of the facts

in light of the evidence presented.  *Clark v. O'Dea*, 257 F.3d 498, 502 (6th Cir. 2001); *see also

Bugh*, 329 F.3d at 512.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

        Petitioner offers several alleged instances of prosecutorial misconduct.  Misconduct

by a prosecutor can rise to the level of a due process violation.  *Lundy v. Campbell*, 888 F.2d 467,

474 (6th Cir. 1989).  However, before habeas corpus relief becomes available, the misconduct

must be so egregious as to deny petitioner a fundamentally fair trial.  *Serra v. Michigan Dep't of

Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993).  The habeas court must consider the extent to

which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it

was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See

United States v. Young*, 470 U.S. 1, 11-12 (1985).  In addition, the court may view any misconduct

in light of the strength of the competent proofs tending to establish guilt.  *See Angel v. Overburg*,

682 F.2d 605, 608 (6th Cir. 1982) (*en banc*).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'"  *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

Petitioner claims that by introducing Ms. Schahczenski's testimony, the prosecutor impermissibly injected an intent element into the proceedings.  (Pet'r's Br., ECF No. 2, PageID.332-333.)  The prosecutor never argued that Petitioner intended to hit Ingram.  Indeed, he argued the opposite:  "we're not alleging that Mr. Jacques intentionally did this.  That's not our position."  (Trial Tr. X, ECF No. 13-16, PageID.1451; *see also Id.*, PageID.1487 ("we're not saying he did it intentionally."))  Instead, the prosecutor focused on how Petitioner's statements demonstrated that Petitioner foresaw the possibility of such an accident under those circumstances.

The trial court identified "foreseeability" as the relevant issue upon which Ms. Schahczenski's testimony might be probative.  The prosecutor's argument tracked the court's decision admitting the testimony.  "'A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings.'"  *See Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009) (quoting *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008)); *see also Bales v. Bell*, 788 F.3d 568, 577 (6th Cir. 2015).  Thus, neither the prosecutor's elicitation of the testimony nor his argument constitute prosecutorial misconduct.

Petitioner also argues that the prosecutor impermissibly commented on Petitioner's silence when the prosecutor argued: "Every one of those witnesses' statements about the drinking or the intoxication—there was no objective evidence."  (Trial Tr. X, ECF No. 13-16, PageID.1450.)  Petitioner interprets that statement as a claim that testimony regarding Petitioner's drunkenness was unrebutted.  Therefore, Petitioner argues, "[s]ince Petitioner is the only person

who could defend himself against the accusations of the witnesses, it is a clear violation of the 5th Amendment and improperly shifted the burden of proof on [Petitioner] to disprove the alleged intoxication."  (Pet'r's Br., ECF No. 2, PageID.332.)

Under the Fifth (and Fourteenth) Amendment, the prosecution may not comment on a defendant's refusal to testify.  *See Griffin v. California*, 380 U.S. 609, 614 (1965).  Whether a prosecutor's comment violates the Fifth Amendment turns on content and context: (1) Did the prosecutor "manifestly intend[]" to comment on the defendant's Fifth Amendment right or would a jury "naturally and necessarily" interpret the remark that way; (2) was it an isolated occurrence or part of an extensive pattern; (3) how strong was the prosecution's other evidence; and (4) did the judge give a curative instruction?  *Bowling v. Parker*, 344 F.3d 487, 514 (6th Cir. 2003); *see also Webb*, 586 U.S. at 396.

In this instance, however, the Court need not review those factors because Petitioner has grossly misinterpreted the prosecutor's comment.  The prosecutor was commenting about the testimony of Petitioner's expert.   The prosecutor's cross-examination of Petitioner's expert included the following exchange:

| | |
|---|---|
| Prosecutor: | Alcohol consumption is not relevant to your opinion? |
| Expert: | In this particular case? |
| Prosecutor: | Yes. |
| Expert: | We have no objective evidence to suggest that he was intoxicated at the time of this accident.  There are no blood results that would indicate that he was impaired because no tests were taken. |
| Prosecutor: | Well, you read the statement of all these witnesses who saw—who described what they thought he was—that they thought he was intoxicated. |
| Expert: | That's correct. |
| Prosecutor: | Is that—you didn't factor that in at all? |

       Expert:        No, sir.  I did not.

(Trial Tr. IX, ECF No. 13-15, PageID.1374.)   The prosecutor's comment does not highlight Petitioner's failure to testify, it highlights his expert's failure to account for the wealth of testimony suggesting that Petitioner was intoxicated.   That emphasis is apparent when one looks at the allegedly objectionable sentence in context:

> He doesn't factor in alcohol.  He said it.  Every one of those witnesses' statements about the drinking or the intoxication—there was no objective evidence.  I don't know how a police—law enforcement officer for fifteen years can say that.  Was he—doesn't he believe all—any of these people?  These respected bar owners, other citizens, who use their common-sense, every-day observations, and they formulated their opinions as to whether or not he was intoxicated or sober or buzzed or was well on his way.

(Trial Tr. X, ECF No. 13-16, PageID.1450.)[3]   Because the prosecutor's argument cannot reasonably be interpreted as a comment on Petitioner's silence, Petitioner has failed to demonstrate any prosecutorial misconduct with respect to this issue.

       Petitioner next contends that the prosecutor's arguments regarding Petitioner's expert crossed the line.  The crux of Petitioner's complaint is as follows: "The prosecutor used "I" statements to bolster his personal beliefs instead of "the evidence shows" to rely on what was presented at trial."  (Pet'r's Br., ECF No. 2, PageID.331.)   Petitioner identifies three specific comments.

       First, Petitioner complains about the very beginning of the prosecutor's argument:

> And the first thing I would like to do is address [Petitioner's expert].  I don't know what you think of his testimony.  This, here, is what I think of his report. (Drops report in wastebasket.)

---

[3] Notwithstanding the prosecutor's incredulity, Petitioner's expert was absolutely correct.  There was no objective evidence of Petitioner's intoxication.  All of the evidence of intoxication that the prosecutor presented was subjective evidence.

(Trial Tr. X, ECF No. 13-16, PageID.1448.)  Standing alone, this argument has all the earmarks of impropriety; it appears as if the prosecutor is expressing a personal opinion as to the witness's credibility.  *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999) ("[M]isconduct occurs when a jury could reasonably believe that the prosecutor was . . . expressing a personal opinion as to the witness's credibility.").  But, when the prosecutor backs up such statements with reference to evidence admitted at trial to support the inference, such argument—though perhaps overly theatrical—does not rise to the level of misconduct.  *Id*. at 551 ("To avoid impropriety, however, such comments must 'reflect reasonable inferences from the evidence adduced at trial.'") (quoting *United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994)).

   In Petitioner's case, after the theatrical, literal trashing of the expert's report, the prosecutor's figurative trashing of the report goes on for pages, identifying the record evidence that calls into question the validity of Petitioner's expert's opinion.  Although the prosecutor started his argument with a personal opinion, he did not invite the jury to reach the same conclusion because the prosecutor had, he invited the jury to reach the same conclusion because the evidence adduced at trial reasonably supported that inference.  The prosecutor's argument, therefore, was not improper.

   Petitioner makes the same argument with regard to the prosecutor's statement: "I think that's preposterous."  (Pet'r's Br., ECF No. 13-16, PageID.1462-1463.)  The prosecutor made that statement when he recounted Petitioner's expert's opinion that alcohol was not a factor in the case.  Petitioner is correct in suggesting that the prosecutor's argument would be perfectly acceptable if, instead of saying "I think that's preposterous," he said, "The evidence shows that's preposterous."  (Pet'r's Br., ECF No. 2, PageID.331.)  But, on this point as well, the prosecutor

reviewed the record evidence that supported the inference that ignoring Petitioners' alcohol consumption was "preposterous."  In so doing, he eliminated the taint from his "I" statement.

Petitioner raises the same argument with respect to a statement in the prosecutor's rebuttal argument: "I submit to you he's got nothing."  (Pet'r's Br., ECF No. 2, PageID.331.)  The prosecutor made that argument as a final comment on Petitioner's expert's reasoning.  The expert's opinion that the accident was unavoidable, even for a sober driver, depended upon a speed of 40 miles per hour.  The determination of that speed, in turn, depended upon drawing conclusions from the victim's position when he came to rest.  (Trial Tr. X, ECF No. 13-16, PageID.1488.)  That conclusion, in turn, depended upon the drag factor assigned to the snow-covered gravel road where the accident occurred.  (*Id*.)  Petitioner's expert picked a drag factor of .3—the lowest possible drag factor under the circumstances.  (*Id*.)  The prosecutor pointed out that any slight upward change in the drag factor would collapse the analytical support for the expert's conclusion that the accident was unavoidable.  (*Id*.)  The prosecutor pointed to the testimony of his expert, who opined that picking just the lowest possible drag factor was not appropriate, to support the conclusion that Petitioner's expert had "nothing" to support his ultimate conclusion of unavoidability.  (*Id*.)

Once again, the prosecutor's argument invites the jury to make inferences based on the evidence admitted at trial, not the prosecutor's personal opinion.  Such arguments do not implicate the protections of due process.

Petitioner also complains that the prosecutor referred to the victim's blood alcohol level, .23, as another piece of evidence, along with the testimony of other witnesses, to support the conclusion that Petitioner was visibly impaired.  (Pet'r's Br., ECF No. 2, PageID.334.)  Prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209

F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).  The inference invited by the prosecutor is not unreasonable.  The argument was proper.

Petitioner contends that the prosecutor impermissibly vouched for the credibility of several witnesses—the bartenders, employees, and patrons of the various bars and restaurants Petitioner visited that night.  The prosecutor described those witnesses as respected citizens who used their common sense to assess Petitioner's state of intoxication.  (Pet'r's Br., ECF No. 2, PageID.334.)  The prosecutor made those statements as he argued that it was unusual that Petitioner's expert chose to ignore alcohol as a factor.  (Trial Tr. X, ECF No. 13-16, PageID.1450.)  The prosecutor posited that perhaps the expert did not believe the witnesses, particularly since the expert wanted objective evidence.  (*Id*.)

The federal courts have generally recognized two types of objectionable vouching.  *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *Francis*, 170 F.3d at 550); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard).  The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility.  *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).  In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965);  *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).

Neither type of vouching is involved in this case.[4]  The prosecutor described the witnesses as respected citizens that used their common sense.  (Trial Tr. X, ECF No. 13-16, PageID.1450.)  He then reviewed the testimony of each witness to support those inferences.  (*Id.*, PageID.1459-1462.)  The prosecutor did not throw the prestige of his office behind these witnesses nor did he suggest to the jury that he knew additional information that warranted his confidence in these witnesses.  Instead, he reviewed their testimony and, based on that testimony, invited the jurors to draw inferences regarding the witnesses.  Such arguments are not misconduct.

In addition to the ineffective assistance claims addressed specifically above, Petitioner also generally contends his trial counsel was ineffective for failing to raise the objections that Petitioner identified in his motion for relief from judgment (Habeas Issues III-VIII.)  As set forth above, the objections Petitioner wanted counsel to raise were meritless.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).  The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"  *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003)

---

[4] The Court observes that, notwithstanding the Sixth Circuit's continuing application of its own precedent on vouching, *see Wogenstahl*, 668 F.3d at 328-29 (citing *Johnson*, 525 F.2d at 482), the Supreme Court has not directly held that vouching amounts to prosecutorial misconduct.  Given the Supreme Court's admonitions to the courts regarding the limits of clearly established general principles, it is doubtful that vouching has been clearly established by the Supreme Court as a due process violation.  *See, e.g., Lopez v. Smith*, 135 S. Ct. 1, 3 (2014) (holding, with respect to a claim of self-representation, that "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshal v. Rodgers*, 569 U.S. 58, 63-64 (2013); *White*, 572 U.S. at 420-21 (same, respecting a claim regarding the privilege against self-incrimination); *Parker*, 567 U.S. at 49 ("The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here.").

(quoting *Greer*, 264 F.3d at 676).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.

Petitioner raises one more complaint about his counsel: she failed to call a toxicologist as an expert witness.  Petitioner claims "[n]o sound conceivable trial strategy could form from not having a toxicologist defend [Petitioner]."  (Pet'r's Br., ECF No. 2, PageID.334-335.)  Petitioner opines that a "toxicologist was imp[e]rative to [his] defense."  (*Id.*, PageID.335.)  Petitioner suggests such a toxicologist could "extrapolate a blood alcohol content based on proven methods."  (*Id.*)

The significant flaw in Petitioner's argument is that there is no evidence from which a toxicologist could extrapolate anything that might benefit his defense.  His blood alcohol level was zero as measured more than 24 hours after the accident.  Although witnesses could testify that they had delivered drinks to Petitioner, or seen him drink them, no witness claimed to have an accurate accounting of Petitioner's consumption of alcohol that afternoon and evening.  Thus, a toxicology expert would have no basis to project forward based on the timing and quantity of Petitioner's alcohol consumption.

Petitioner offers nothing to support his speculation that a toxicologist's testimony might have been favorable to him.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[5]

---

[5] *See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense.");  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's

Finally, Petitioner complains that his appellate counsel rendered ineffective assistance for not raising on his direct appeal the issues Petitioner raised in his motion for relief from judgment. Those issues were meritless. Appellate counsel was not ineffective for failing to raise them. Accordingly, the state courts' rejection of Petitioner's remaining ineffective assistance was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on those claims.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A

---

failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); *Waterhouse v. Hatch*, 498 F. App'x 811, 813 (10th Cir. 2012 ) ("[C]ounsel's failure to secure expert testimony was not prejudicial . . . the potential value of such expert testimony [regarding the victim's credibility] would be speculative."); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.


Dated:    __February 21, 2019__              __/s/ Timothy P. Greeley__
                                                          Timothy P. Greeley
                                                          United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).